## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

DAVID MICHAEL WALKER,

|  |  |  |
|---|---|---|
| Plaintiff, | : | Case No. 3:07-cv-281 |
|  |  | District Judge Walter Herbert Rice |
| -vs- |  | Chief Magistrate Judge Michael R. Merz |
|  | : |  |
| SUSAN L. GOLDIE, et al., |  |  |
| Defendant. |  |  |

## REPORT AND RECOMMENDATIONS

        This case is before the Court on Motions for Judgment on the Pleadings by Defendant Susan L. Goldie (Doc. No. 9) and Defendant Greene County Board of County Commissioners (Doc. No. 14).  Plaintiff has opposed both Motions (Doc. Nos. 13, 17) and the moving Defendants have filed reply memoranda in support (Doc. Nos. 16, 18).

        This case was referred to the undersigned United States Magistrate Judge under 28 U.S.C. §636(b) on May 5, 2008 (Preliminary Pretrial Order, Doc. No. 20),

> to perform any and all functions authorized for full-time United States Magistrate Judges by statute, including, without limiting the generality of the foregoing, all motions to remand removed cases to state court, all motions to dismiss or for judgment on the pleadings under Fed. R. Civ. P. 12, and all discovery-related motions. In each such case, the Magistrate Judge shall proceed in accordance with Fed. R. Civ. P. 72.

*Id*. at 6.  Fed. R. Civ. P. 72 requires a report and recommendations on a motion under Fed. R. Civ. P. 12.

**Jurisdiction**

Plaintiff David Michael Walker brought this action to recover money damages because "Defendants seized property of the Plaintiff unlawfully, without a warrant and without probable cause, to punish the Plaintiff for exercising his right to be secured in his person and property." (Complaint, Doc. No. 1, Preamble).

Plaintiff avers his case "arises under The Civil Rights Act of 1964, USC Section 1983 and 28 USC Sections 1331, 1343(3) and 1367(a) and the principal [sic] of pendent jurisdiction." *Id*. ¶ 1. These allegations are substantially muddled. The Civil Rights Act of 1964 does not create any cause of action similar to those pleaded by Plaintiff. 42 U.S.C. § 1983, adopted in 1871, creates a cause of action sounding essentially in tort on behalf of any person deprived of a constitutional right by someone acting under color of state law. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 709 (1999); *Memphis Community School District v. Stachura,* 477 U.S. 299, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986); *Carey v. Piphus,* 435 U.S. 247, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978). It appears that Plaintiff's First Cause of Action is intended, in part, to be pleaded under § 1983. This Court has jurisdiction of such claims under 28 U.S.C. § 1331 and § 1343.

In addition, at ¶ 39, also in the First Cause of Action, Plaintiff alleges that Defendant's acts deprive him of his rights under state law to be free from false imprisonment, abuse of process, malicious prosecution, intentional infliction of emotional distress, and harm from the negligent performance of judicial duties, claims said to arise under the pendent jurisdiction of this Court. The concept of pendent jurisdiction, recognized by the Supreme Court in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966), has been statutorily replaced by supplemental jurisdiction under 28 U.S.C. § 1367.

In his Second and Third Causes of Action, Plaintiff claims false arrest and malicious

prosecution. He states no jurisdictional basis, but implicitly asserts these claims arise under state law and that the Court has supplemental jurisdiction under § 1367. Because these facts are part of the same "case or controversy" out of which the § 1983 claim arises, this Court has supplemental jurisdiction over the Second and Third Causes of Action.

## Standard for Decision

The instant Motions are brought under Fed. R. Civ. P. 12(c). In ruling on a motion for judgment on the pleadings, the Court must accept all the factual allegations of the complaint as true. *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001); *Paskvan v. City of Cleveland Civil Serv. Comm'n.*, 946 F.2d 1233, 1235 (6th Cir. 1991)(citing *Beal v. Missouri Pacific R.R.,* 312 U.S. 45, 51, 61 S. Ct. 418, 85 L. Ed. 2d 577 (1941)). The Court must then decide whether the moving party is entitled to judgment as a matter of law. *Lavado v. Keohane,* 992 F.2d 601, 605 (6th Cir. 1993). This is the same standard applied in deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *EEOC v. J. H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001).

The purpose of Fed. R. Civ. P. 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993), citing *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987). Put another way, "The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or merits of the case." Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 2d §1356 at 294 (1990).

The test for dismissal under Fed. R. Civ. P. 12(b)(6) has recently been re-stated by the Supreme Court:

Factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007), citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)(" Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, " 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.' " 5 Wright & Miller § 1216, at 233-234 (quoting *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D.Hawai 1953) ); see also *Dura [Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005),, at 346, 125 S.Ct. 1627; *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc* ., 289 F.Supp.2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

*Bell Atlantic*, 127 S. Ct. at 1966; *see also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545 (6th Cir. 2007).

Bell Atlantic overruled *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)(Specifically disapproving of the proposition that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") However, in *Erickson v. Pardus*, 127 S. Ct. 2197 (2007), the Court unanimously reaffirmed notice pleading requirement. *See also Neitzke v. Williams,* 490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); *Hishon v. King & Spalding*, 467 U.S. 69, 104 S. Ct. 229, 81 L. Ed. 2d 59(1984); *Monette v. Electronic Data Systems, Inc.,* 90 F.3d 1173, 1189 (6th Cir. 1996). For purposes of the motion to dismiss, the complaint must be construed

4

in the light most favorable to the plaintiff and its allegations taken as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); *Westlake v. Lucas,* 537 F.2d 857 (6th Cir. 1976); *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990). A *pro se* litigant is entitled to liberal construction of his pleadings. *Haines v. Kerner*, 404 U.S. 519 (1972). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988); *followed Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236 (6th Cir, 1990); *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101 (6th Cir. 1995). The Court "need not accept as true legal conclusions or unwarranted factual inferences*." Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987). Bare assertions of legal conclusions are not sufficient. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *Sogevalor S.A. v. Penn Central Corp*., 771 F. Supp. 890, 893 (S.D. Ohio 1991). It is only well-pleaded facts which are construed liberally in favor of the party opposing the motion to dismiss. *Id.,* citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); see also Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 2d §1357 at 311-318 (1990). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1964-65 (2007), *citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)(on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation.")

**Procedural History in the State Courts**

The extensive history of this dispute in the state courts is set forth in Judge James Brogan's opinion for the Greene County Court of Appeals in *State v. Walker*, 164 Ohio App. 3d 114 (Ohio App. 2d Dist., 2005)("Walker IV") as follows:

> [**P5]  In the first assignment of error, Walker claims that "the trial court exceeded its authority under O.R.C. § 2929.21 by ordering Appellant to pay restitution for the care of his seven black bears." The following facts are pertinent to this assignment of error. On August 8, 2003, Greene County Animal Control Officer, David Turner, was dispatched to a house on Jasper Road, on a report that a German Shepherd dog was loose and was possibly chasing a horse. When Turner arrived at the house, he saw a dog of the same description outside the fenced yard. However, before Turner could capture the dog, it somehow got back into the fenced area. Turner had been to the house previously for the same type of complaint, and was familiar with a resident of the house (David Walker). Because the gate was locked, Turner could not access the property, and simply left a pink slip indicating that a German Shepherd dog had been running loose. The Greene County Sheriff's Department then then served Walker with a citation for violating R.C. 955.22, i.e., for failing to confine a dog. Since Walker had a prior conviction, he was charged with a fourth degree misdemeanor. See R.C. 955.99(E)(1).

> [**P6]  The case was tried to the Xenia Municipal Court on September 16, 2004. According to the trial transcript, Walker's defense was that he was not the owner of the dog, and that on prior occasions, the Greene County Animal Control Department had allowed a dog's owner to be substituted for a non-owner who had received the citation. The trial court did not find this persuasive, and found Walker guilty of failing to confine the dog. Specifically, even though Walker did not own the dog, he was responsible for the dog because he was a "harborer." As sanctions, the court ordered Walker to surrender the German Shepherd as well as a Great Dane to Animal Control. Walker also received a thirty day jail sentence, which was suspended on condition that Walker cooperate with [***379] Animal Control and that he have no further violations for five years. The judge additionally ordered that Walker could have no other animals on his property for five years. This order was stayed so long as Walker had no further lack of cooperation for five years.

> [**P7]  Because Walker questioned whether the court had authority to order removal of the dogs, the court allowed Walker to submit a memorandum on this point. After Walker filed a memorandum, the court

issued another judgment entry on October 23, 2003, finding that Walker lacked standing to object to the order that the dogs be turned over to Greene County. The court reasoned that Walker had absolved himself of responsibility for the dogs, which did not belong to him. The court also addressed Walker's objection to the order limiting him from having other animals on the property. In this regard, the court noted that the order had been suspended pending Walker's cooperation. The court indicated it could not anticipate the "many ways" in which Walker could fail to cooperate.

[**P8] In the entry, the court commented on the fact that Walker was currently on probation, and that further orders might be issued to address what kept getting Walker in trouble, i.e., his inability to confine the number of animals he then had. Although the record is devoid of any prior reference to bears, the court mentioned in this hearing that it had particular concern with three bears who were then on Walker's premises. The Court observed that the bears could potentially endanger people if they were not properly confined.

[**P9] Walker filed a notice of appeal from this entry, which was docketed in our court as State v. Walker, Greene App. No. 2003-CA-93, 2004 Ohio 7258. Walker also filed a notice of appeal from his conviction and sentence in another case in Xenia Municipal Court. In that case, Walker had been convicted of one count of failure to properly confine a vicious dog, and two counts of failure to confine a dog. The second appeal was docketed in our court as State v. Walker, Greene App. No. 2003-CA-94, 2004 Ohio 7259.

[**P10] While the two cases were pending on appeal, the trial court filed a judgment entry in the present case, indicating that the matter was before the court for "review." The record does not indicate that the court held any type of evidentiary hearing before issuing the judgment entry, nor does the record reveal that any type of prior notice was given to Walker. The judgment entry was filed on February 17, 2004. In the entry, the court noted that an incident had occurred on February 16, 2004, in the early morning hours, in which three bears were loose on the roadway and had to be corralled by law enforcement officers and others. Because the court was concerned about lack of an alarm system and backup generator for any electrical fencing, as well as Walker's ability to adequately afford to secure the animals, the court ordered Walker to remove the bears from his property within fourteen days. There is no evidentiary material in the record supporting these findings, nor was Walker ever charged with an offense relating to the bears.

[**P11] On February 26, 2004, Walker filed a motion for stay of

judgment, contending that a question existed about how the bears' confinement was breached. Walker also argued that his due process rights were violated because the court had issued the order without giving him notice or an opportunity to be heard. The court denied the motion for stay on February 27, 2004.

[**P12] On February 26, 2004, Walker filed a notice of appeal from the decision ordering that he remove the bears. This appeal was docketed in our court as State v. Walker, Greene App. No. 2004-CA-16, 2004 Ohio 7252. Walker also filed a motion for stay of execution in our court, and we then filed a decision and entry on March 2, 2004. In the entry, we noted that Walker had three pending appeals. We observed that Walker appeared to be most concerned about the trial court or the state taking steps to destroy the bears if they could not be transferred by the court-ordered deadline. We denied the motion for stay, but ordered that:

[**P13] "if Walker fails to timely remove the bears from his property in compliance with the trial court's February 17, 2004 judgment entry, thereby necessitating a public agency to take possession and/or control of the bears, that the bears not be destroyed during the pendency of these appeals except in the event of an emergency necessitating their immediate destruction. Counsel for the parties shall take steps to see that copies of this order are served on the appropriate public agency or agencies that may take possession and/or control of these bears." State v. Walker, Greene App. Nos. 2003-CA-93, 2004 Ohio 7258, 2003-CA-94, 2004 Ohio 7259, and 2004-CA-16, 2004 Ohio 7252.

[**P14] As ordered, Walker did remove the bears in a timely fashion to the property of another individual (Todd Bell). Subsequently, on March 9, 2004, the bears were apparently seized by Greene County Animal Control. The Court held another "review" hearing on March 11, 2004. The docket entries before us do not indicate that the trial court provided Walker with notice of the hearing. The court also did not give Walker an opportunity to present evidence or witnesses.

[**P15] The hearing transcript indicates that Walker was questioned about his income, and about what he currently spent to feed the bears (which was about $ 50 total per month). The trial court then made a lengthy statement, expressing concern over protecting both the public and the animals. Some discussion occurred about the prospect of Walker regaining control over the bears, and the court indicated that Walker would have to obtain a United States Department of Agriculture (USDA) permit and the court would have to approve the facility.

[**P16] On the day of the hearing, the court filed an order using the

8

caption for both of Walker's criminal cases, as well as the caption for a case involving Todd Bell. The court ordered that expenses incurred or to be incurred for the care, feeding, housing, transportation, and medical expenses for the seven bears would   be reimbursed by the Court and passed on to Walker and Todd as "restitution due, " in such amounts as the court would hereafter order. The court also issued an order for transportation and housing of the bears, but sealed the order.

 [**P17]  On April 13, 2004, the court issued an order indicating it would have a review hearing on April 28, 2004. At the review hearing, the court again did not provide Walker with an opportunity to present evidence or witnesses. The transcript of that hearing indicates that a representative of Animal Control stated that Walker had been cooperative with her, and that all the representative wanted was proof of income. Walker was then questioned about his income. Walker indicated that he received rent for a property owned by his mother, and paid the mortgage. Other than that, Walker claimed to have no other source of income. The court observed that in view of Walker's level of cooperation and lack of income, Walker was unlikely to get the bears back. The court stated that $ 10,827 in expenses had already been incurred, and that Walker  should talk to his probation officer about how he was going to pay the bill.

 [**P18]  After Walker requested an itemized list of fees and charges, the court filed an entry on June 11, 2004, itemizing $ 10,971 in expenses. Also on June 11, 2004, the court filed an entry ordering that two infant bears be declawed because Walker had refused to consent. The court then filed orders on June 28, 2004, and July 7, 2004, overruling Walker's request for a hearing on expenses, and clarifying certain aspects of the expenses. A notice of appeal was filed from the order of June 28, 2004, and was docketed in our court as Greene App. No. 2004-CA-83. This appeal was later dismissed for lack of a final appealable order. State v. Walker (June 8, 2005), Greene App. No. 2004-CA-83.

 [**P19]  On July 9, 2004, an order of arrest was filed with the trial court, ordering Walker's arrest for probation violations. At a hearing held on July 12, 2004, the court told Walker he would be held on no bond for a probation violation and would have the right to be represented by counsel at the hearing. The court mentioned that there were five probation violations, but they had not all yet been written up. The two violations mentioned were failure to co-operate in paying or arranging a payment agreement for the bears, and non-payment of child support. After the hearing ended, Walker apparently made a rude comment to the judge, was held in contempt, and was sentenced to thirty days in jail.

[**P20] On July 14, 2004, Walker filed a motion for reconsideration and to set bond. In the motion, Walker's counsel indicated that Walker had been arrested on July 9 for probation violations but was not told what the violations were. Walker was then held in jail until July 12, 2004, at which time he was brought to court for a hearing. Walker's counsel was never notified of the hearing. However, counsel apparently found out anyway, and notified the court twice that he would be present. When counsel was held up in another court on the day of the hearing, counsel contacted Xenia Municipal Court and received assurances from the clerk that the inmates were still in the hallway and that the delay should be all right. The clerk also promised to tell the court about counsel's problem getting to court. Despite this, the court went ahead without the presence of Walker's counsel, and the end result, as we noted, is that Walker was jailed for contempt.

[**P21] On July 16, 2004, the trial court denied a motion for reconsideration and to set bond. Walker then filed a petition for writ of habeas corpus with the Greene County Common Pleas Court. Subsequently, on July 27, 2004, the Common Pleas Court vacated the criminal contempt finding and remanded the matter for trial on the contempt issue before another judge. The common pleas court noted that there was no need to summarily punish Walker to protect the integrity of the ongoing proceeding, because that proceeding had ended. The court commented that the better procedure would have been to detain Walker, set bond, and set the matter for a public trial with criminal due process procedure.

[**P22] Walker filed a motion for recusal and affidavit of bias on July 29, 2004. However, the common pleas court subsequently concluded that the trial judge had not shown bias toward Walker. On August 4, 2004, the trial court filed an order continuing Walker on probation and also continuing the contempt matter indefinitely pending Walker's continued and future compliance on probation.

[**P23] On December 23, 2004, we filed opinions in State v. Walker, Greene App. Nos. 2003-CA-93, 2004 Ohio 7258, State v. Walker, 2003-CA-94, 2004 Ohio 7259, and State v. Walker, 2004-CA-16, 2004 Ohio 7252. In the predecessor appeal of the present case (No. State v. Walker, Greene App. Nos. 2003-CA-93, 2004 Ohio 7258), we affirmed the conviction for failure to confine a dog. We reasoned that Walker was liable as a harborer, even though he was not the owner of the dog. In addition, we found that the trial court had acted within its discretion under R.C. 2929.51(A)(2) by restricting Walker to animals he had on the premises. We noted that this sanction was actually stayed, and that Walker had a number of past violations for failure to confine. The trial court had also alluded to its concern with bears housed on the property and the potential for danger to the community if the bears escaped. See State v. Walker, Greene App. No. 2003-CA-93, 2004 Ohio 7258, at P21.

[**P24]  In State v. Walker, Greene App. No. 2003-CA-94, 2004 Ohio 7259, we found that the trial court and State had misread 955.22(D)(1) by requiring Walker to confine a pit bull in a locked yard that had a top. We concluded that putting a top on a yard fence was impracticable. Id. at P9. Since Walker had properly confined the dog in a locked yard, we reversed his conviction for failure to confine a vicious dog. Id. at P10-11. However, we did affirm Walker's convictions for failing to confine a German Shepherd and a Doberman Pincer, finding that those convictions were not against the manifest  weight of the evidence. Id. at P14-22. We did not address any issues relating to the bears or to probation conditions.

[**P25] Finally, in State v. Walker, Greene App. No. 2004-CA-16, 2004 Ohio 7252, we considered an appeal from a trial court order requiring Walker to rid his property of the bears. Id. at P1. We found that exigent circumstances might excuse what due process and Crim. R. 43(A) would otherwise require. Id. at P5-8. Because of the exigent circumstances, we did not find a due process violation in the court's ex parte order of February 17, 2004, which ordered Walker to remove the bears. Id. at P9-17. We also noted that a follow-up hearing occurred on March 11, 2004, in which Walker was afforded an opportunity to speak. Id. at P18.

[**P26]  The second assignment of error in that case dealt with whether the court had abused its discretion in ordering removal of the bears. In this regard, we found that the removal order was reasonably related to the offense for which Walker was on probation, i.e., the failure to confine a dog. Id. at P23.

114 Ohio App. 3d at 117-122.


### Defendant Judge Goldie's Motion

Defendant Judge Susan Goldie seeks dismissal on grounds that Plaintiff's claims are barred by absolute judicial immunity, the relevant statutes of limitations, qualified immunity, immunity under state law, and the exclusive jurisdiction of the Ohio Court of Claims to decide claims for monetary damages against state officials arising under state law.


**1.      Absolute Judicial Immunity**

The common law absolute immunity of judges was first recognized in this country in *Bradley v. Fisher,* 80 U.S. (*Wall*) 355, 20 L. Ed. 2d 646 (1872). It was explicitly extended to actions under 42 U.S.C. § 1983 in *Pierson v. Ray,* 386 U.S. 547, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967), and *Stump v. Sparkman*, 435 U.S. 349, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978). The immunity is lost only when judges act in the clear absence of all jurisdiction. *Id.* at 362; *King v. Love*, 766 F.2d 962 (6th Cir. 1985); *Schorle v. City of Greenhills,* 524 F. Supp. 821, 828 (S.D. Ohio 1981). Only absence of subject matter jurisdiction vitiates immunity, not absence of personal jurisdiction. *Holloway v. Brush*, 220 F.3d 767 (6th Cir. 2000)(en banc). Limited jurisdiction judges are absolutely immune from damages for acts in excess but not in clear absence of jurisdiction. *Id.*. While immunity does not encompass administrative acts of judges, *Forrester v. White*, 484 U.S. 219, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988), it does extend even to a case where a judge is alleged to have ordered police to use excessive force to bring a public defender before the court since the act allegedly done was within judicial capacity and in aid of jurisdiction. *Mireles v. Waco,* 502 U.S. 9 , 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991). When a plaintiff alleges that a judge acted in a non-judicial capacity, the Sixth Circuit relies "on a functional analysis to determine which acts are protected, meaning that one must determine whether the actions are truly judicial acts or 'acts that simply happen to have been done by judges.'" *Mann v. Conlin*, 22 F.3d 100 (6th Cir. 1994), quoting *Morrison v. Lipscomb*, 877 F.2d 463, 465 (6th Cir. 1989)(quoting *Forrester*, 484 U.S. at 227). "Paradigmatic judicial acts' are those that involve resolution of disputes "between parties who have invoked the jurisdiction of a court...." *Forrester,* 484 U.S. at 227. State domestic relations trial judge who excluded members of "judicial watchdog" group from courtroom during sensitive testimony on motion of a party is immune in his individual capacity; a damages award against him in his official capacity is barred by the Eleventh Amendment. *Simmons v. Conger*, 86 F.3d 1080 (11th Cir. 1996). While subject matter jurisdiction may be narrowly construed for other purposes,

when the issue is judicial immunity, it is to be broadly construed. *Duty v. City of Springdale, Arkansas,* 42 F.3d 460, 461 (8th Cir., 1994). Conversely, exceptions to judicial immunity are to be narrowly construed. *Adams v. McIlhany*, 764 F.2d 294, 298 (5th Cir. 1985). A judge does not act in the clear absence of all jurisdiction if he or she merely acts in excess of his or her authority. *Doe v. McFaul*, 599 F. Supp. 1421, 1431 (N.D. Ohio 1984).

When a judge acts as a prosecutor, he or she is not immune. *Sevier v. Turner*, 742 F.2d 262 (6th Cir. 1984). While the line between prosecutorial and judicial functions is not yet clearly defined, a judge is not protected when performing the purely prosecutorial function of initiating criminal prosecutions. *Barnes v. Winchell,* 105 F.3d 1111 (6th Cir., 1997), particularly if based on the judge's private interests. However, a judge can still be protected when undertaking seemingly prosecutorial functions in a case brought before the judge independently by the parties. *Id.*

Initially, Plaintiff alleges in the Complaint that Judge Goldie was acting in her official capacity as a Judge of the Xenia Municipal Court. However, Plaintiff asserts that the Ohio Second District Court of Appeals has determined that Judge Goldie acted illegally in ordering a forfeiture of Plaintiff's interest in seven bears, both because forfeiture was not a remedy within her authority in the case in suit and because she denied Plaintiff procedural due process (lack of notice and hearing) by the manner in which the forfeiture was ordered. Plaintiff concludes "[i]mposition of forfeiture illegally is the basis for denying Goldie judicial immunity, first since she lacked subject matter jurisdiction, and second, even if she had jurisdiction, her actions were non-judicial actions that are taken by the state (the prosecutor), not the judge." (Response in Opposition, Doc. No. 13, at 8.)

Plaintiff's argument, in both its branches, depends entirely on characterizing the forfeiture as having been done under Ohio Revised Code § 2981.05. As Plaintiff notes, such a forfeiture proceeding can only be brought by the county prosecutor and only the court of common pleas has

13

subject matter jurisdiction of such actions (Response in Opposition, Doc. No. 13, at 10).

However, there is no suggestion in any of the Second District Court of Appeals opinions which have been brought to this Court's attention that Judge Goldie ever acted or purported to act under Ohio Revised Code § 2981.05. See *State v. Walker*, 164 Ohio App. 3d 114, 841 N.E. 2d 376 (Ohio App. 2d Dist. 2005)("Walker IV") and *State v. Walker,* 2006 Ohio App. LEXIS 923 (Ohio App. 2d Dist. Mar. 3, 2006)("Walker V").

In Walker IV, the Court of Appeals held that restitution in the amount of $32, 127, the cost of maintaining the bears after they were seized from Plaintiff, was not a proper item of restitution to be ordered under Ohio Revised Code § 2929.21(E), the statute which authorizes Ohio criminal courts, both municipal and common pleas, to order restitution in criminal cases. Because the order of restitution was improper,

> [W]e find that the trial court abused its discretion in ordering the bears
> forfeited unless Walker paid restitution for their care. As a preliminary
> point, we reiterate that the court erred in ordering restitution for the care
> of the bears. Consequently, the court could not have grounded forfeiture
> on the failure to comply with its proper order.

*Id*. at ¶ 76.

In Walker V, the Court of Appeals discussed an issue raised in Walker IV but left open: the seventh assignment of error - whether "the trial court erred by disposing of his property – the bears – contrary to the provisions set forth in R.C. 2329.01 *et seq*., and 2933.41 *et seq.* These statutes deal with property subject to levy and sale and disposition of property held by a law enforcement agency." Walker V at ¶ 7. The Court of Appeals concluded:

> The trial court lacked authority to order a forfeiture of the bears pursuant
> to the criminal statute under which Walker was convicted. As such, its

judgment to that effect must be reversed. The state has not sought forfeiture under any other statute, nor has it brought any criminal charges related to Walker's possession or treatment of the bears. When and if it does so, the trial court must be mindful of the due process requirements of such proceedings.

*Id*. at ¶ 17. As noted above, there is no reference to Ohio Revised Code § 2981.05 in Walker IV or

V, nor is there any suggestion that Judge Goldie acted without subject matter jurisdiction in imposing either the restitution order or the forfeiture order. The Court of Appeals specifically holds that the State has not sought forfeiture, belying thereby any claim that Judge Goldie, acting in a prosecutorial capacity on behalf of the State by somehow bringing, *sub silentio*, an action under Ohio Revised Code § 2981.05 before herself and then deciding it.

In Walker IV and V, the Second District Court of Appeals held that Judge Goldie exceeded her authority by ordering the bears forfeited and did so without providing Mr. Walker with procedural due process. But those holdings do not support piercing absolute judicial immunity. The Court of Appeals never suggests a municipal court cannot order the forfeiture of animals in an appropriate case and once procedural due process has been afforded the property owner. It had previously upheld the *ex parte* seizure of the bears on order of a visiting judge because of the exigent circumstances: bears roaming loose create an obvious risk to the public safety. Once the bears had been seized on order of the Xenia Municipal Court, something had to be done to support them. Apparently, Plaintiff never had the funds to pay for their upkeep in state custody, as he indicates in his motion papers he would never have been able to pay the restitution amount. Because of the Court of Appeals' order in Walker IV, Plaintiff received the benefit of state support of the bears without ever becoming liable for the expense. The doctrine of absolute judicial immunity precludes his now recovering additional money from Judge Goldie.

## 2.     The Statute of Limitations

This case was filed August 1, 2007 (Complaint, Doc. No. 1). The parties are in agreement that the statute of limitations for claims under 42 U.S.C. § 1983 is two years under Ohio Revised

Code §2305.10 which the federal courts borrow in the absence of a Congressionally-enacted statute of limitations. *Banks v. City of Whitehall*, 344 F. 3d 550, 551 (6th Cir. 2003), *citing Browning v. Pendleton,* 869 F.2d 989 (6th Cir. 1989)(*en banc*).

      Federal law determines when the statute of limitations for a civil rights action begins to run. *Wallace v. Kato*, ___ U.S. ___, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007). The standard rule is that the right accrues when a plaintiff has a complete and present cause of action. *Id*. That is when the plaintiff can file suit and obtain relief. *Id*., *citing Bay Area Laundry& Dry Cleaning Pension Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192 (1997). Under *Wallace v. Kato*, "the *Heck [v. Humphrey]* rule for deferred accrual is called into play only when there exists a 'conviction or sentence that has not been . . . invalidated,' that is to say, 'an outstanding criminal judgment." 127 S. Ct. at 1097-98. The statute of limitations begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Trzebuckowski v. City of Cleveland,* 319 F.3d 853, 856 (6th Cir. 2003), citing *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516 (6th Cir. 1997) (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)). In determining when the cause of action accrues in § 1983 cases, the Sixth Circuit looks to the event that should have alerted the typical lay person to protect his or her rights. *Id*. citing *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991). *See also Bell v. Ohio State University,* 351 F.3d 240, 247 (6th Cir. 2003); *Hughes v. Vanderbilt University*, 215 F.3d 540, 548 (6th Cir. 2000).

      Plaintiff seeks to defeat Judge Goldie's statute of limitations defense by asserting that "all Walker's claims arose from the illegal forfeiture of his bears by Goldie" (Response, Doc. No. 13, at 13) and that the forfeiture action was "finally resolved no earlier than March 2006, when the Second District Court of Appeals ruled that '[t]he trial court lacked authority to order a forfeiture of the bears pursuant to the criminal statute under which Walker was convicted" *Id*. at 14.

      The Magistrate Judge disagrees. Plaintiff knew his bears had been ordered forfeited when

Judge Goldie entered an order to that effect on March 11, 2005.  Walker V, ¶ 1.  Federal law did not require him to wait to file under § 1983 until he found out on March 3, 2006, that the Second District agreed with him that the forfeiture order was unlawful.  It has long been established that there is no requirement to exhaust state court remedies before filing an action for money damages under § 1983. *Patsy v. Bd. of Regents,* 457 U.S. 496 (1982).  The two-year statute of limitations for Plaintiff's § 1983 claims expired on March 11, 2007, and they are therefore time-barred and should be dismissed with prejudice on that basis.

Plaintiff has not responded to Defendant Goldie's assertion that all of his state law claims are subject to the one-year statute of limitations in Ohio Revised Code § 2305.11.  Accordingly, those claims should also be dismissed with prejudice as time-barred.

Because Defendant Goldie is entitled to dismissal with prejudice based on absolute judicial immunity and the statute of limitations, the Court need not reach the other affirmative defenses raised in her Motion.

## Defendant Greene County's Motion to Dismiss

Defendant Greene County, Ohio, also seeks dismissal of all claims made against it under Fed. R. Civ. P. 12(c) on the grounds that the Complaint does not state a claim and that any claims are barred by the statute of limitations and by the doctrine of *res judicata*.

## 1.      Failure to State a Claim

In his Statement of Facts in opposition, Plaintiff discusses for six pages the combined claims he has against all Defendants (Response in Opposition, Doc. No. 17, at 2-8).  Walker then begins

his analysis by pointing out that the territorial jurisdiction of the Xenia Municipal Court has territorial jurisdiction over most of the Greene County, that Judge Goldie and "Greene County acted in concert to deprive Walker of his property," and therefore "Goldie's actions and the actions of Greene County employee's [sic] inure to the County." *Id.* at 9. Finally, even without the "inurement" argument, Walker asserts Greene County is liable because of the acts of Greene County Animal Control in seizing the bears and of the Greene County Sheriff in arresting Plaintiff for probation violations in July, 2004, on an invalid warrant. *Id.* at 9-10.

A judge of an Ohio Municipal Court is neither a municipal nor a county employee, but rather an elected[1] officer of the State of Ohio. Even if a municipal judge were an "employee," there is no liability under 42 U.S.C. § 1983 on a respondeat superior basis. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Municipalities and other bodies of local government are "persons" within the meaning of §1983 and may therefore be sued directly if they are alleged to have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. *Id.* However, Plaintiff nowhere alleges that Greene County had some unconstitutional policy which Judge Goldie was merely enforcing.

Plaintiff does not allege that there was a conspiracy among Judge Goldie, Greene County Animal Control, and the Greene County Sheriff, but he does allege they acted in concert. Of course, any time a law enforcement officer carries out a judicial order, he or she is in some sense "acting in concert" with that judge, but that cannot be a basis for finding the law enforcement officer's employer liable under § 1983. A plaintiff would have to establish in the first instance that the act of the officer was itself unconstitutional. If an officer obtains a warrant through material false statements, either knowingly or in reckless disregard for the truth, he is liable under §1983. *Hill v.*

---

[1]Unless sitting by appointment of the Governor for an unexpired term, pending election.

*McIntyre,* 884 F.2d 271, 275 (6th Cir. 1989); *Hutsell v. Sayre,*  5 F.3d 996 (6th Cir. 1993). However, an officer is entitled to qualified immunity unless the warrant is so utterly lacking in probable cause that no officer of reasonable competence would have concluded a warrant should issue.  *Malley v. Briggs*, 475 U.S. 335106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986);  *Hutsell, supra; Yancey v. Carroll County,* 876 F.2d 1238, 1243 (6th Cir. 1989).

As noted above, the Second District Court of Appeals upheld the seizure of the bears on an *ex parte* warrant because of exigent circumstances: they were roaming at large.  Plaintiff pleads no basis on which the Animal Control Officer should have concluded that that warrant was "utterly lacking in probable cause."  And of course the Animal Control Officer himself or herself is not Greene County and respondeat superior does not apply to the County through him or her.  The same thing is true of whichever deputy sheriff made the probation violation arrest.[2]  That is to say, Plaintiff has not alleged that either the seizure of the bears or Plaintiff's arrest was pursuant to an unconstitutional County policy.  Therefore the Complaint should be dismissed as to Greene County for failure to state a claim against it upon which relief can be granted.

---

[2]Greene County correct points out that the Complaint does not allege the warrant was issued by a probation officer and not a judge, although that allegation is made in Plaintiff's Response.  Of course, a response to a motion to dismiss does not act as an amendment to a complaint and Plaintiff has not sought to amend the Complaint to add such an allegation, nor is it clear that such an allegation would itself state a claim for relief under § 1983.  The Magistrate Judge takes no position on the latter question.

**2.      Statute of Limitations**

All claims against Greene County under § 1983 are also barred by the same statute of limitations defense as is offered above for Judge Goldie.  Each allegedly unconstitutional act by a Greene County employee – the Animal Control Officer seizing the bears and the deputy sheriff making the arrest – occurred even earlier than the eventual order purporting to forfeit the bears[3]. All claims against the County under § 1983 or for malicious prosecution under state law should be dismissed with prejudice as time-barred.

Given the disposition of these two defenses, the Court need not consider the *res judicata* matter.

**Conclusion**

In accordance with the foregoing analysis, it is respectfully recommended that the Complaint herein be dismissed with prejudice.

May 20, 2008.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

---

[3]Judge Brogan's opinion in Walker IV makes the chronology clear: the bears were seized because they were roaming free, having escaped from Mr. Bell's property where Walker took them when he was ordered to remove them from his own property.  It was only well after they had been seized and cared for at public expense for some time that Judge Goldie attempted to forfeit Walker's interest in them for failing to repay the public for the expense of their upkeep.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).